## IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
## IN AND FOR MANATEE COUNTY, FLORIDA

**JOHN O'KEEFE,**

      **Plaintiff,**                                           **CASE NO.:2018-CA-_____**

**vs.**

**Deputy DARREL PATTERSON, individually,**
**Deputy GREG MELITA, individually,**
**Deputy ZACHARY BRADLEY, individually,**
**Sheriff RICK WELLS, in his official capacity as Sheriff**
**of Manatee County,**
      **Defendants.**

_____/

## COMPLAINT

COMES NOW, the Plaintiff, JOHN O'KEEFE ("Plaintiff"), and files this Complaint against Defendants, RICK WELLS, in his official capacity as Sheriff of the Manatee County ("MCSO"); Deputy DARRELL PATTERSON ("Patterson"), acting under the color of law, individually; Deputy GREG MELITA ("Melita"), acting under the color of law, individually; Deputy ZACHARY BRADLEY ("Bradley"), acting under the color of law, individually, and states:

## INTRODUCTION

1.      This is a civil action arising under the Constitution and laws of the United States, and the Constitution and laws of the State of Florida.

2.      This action is brought pursuant to 42 U.S.C. §1981; 42 U.S.C. §1983; 42 U.S.C. §1988; Chapter 86, Florida Statute; common law and in equity.

3.      This action seeks compensatory, economic, consequential, special damages and punitive damages, in amounts to be established at trial. In addition, the Plaintiff seeks declaratory and equitable (i.e. injunctive) relief.

## JURISDICTION AND VENUE

4.      This Complaint seeks damages in excess of $15,000.00, exclusive of attorneys' fees and costs.

5.      This Court has jurisdiction pursuant to Chapter 26, Florida Statutes; Article V, § 5(b), Florida Constitution, and has concurrent jurisdiction of the 42 U.S.C. 1983 (Federal Law) actions pursuant to the Supremacy Clause, Article VI, United States Constitution.

6.      Plaintiff in this action seeks relief under the Fourth and Fourteenth Amendments of the United States Constitution, and the Civil Rights Act of 1871, 42 U.S.C. § 1983, including compensatory damages, punitive damages, costs, and attorney's fees, pursuant to 42 U.S.C. §1988, Declaratory Relief under Chapter 86, Florida Statutes, and equitable (i.e. Injunctive) relief.

7.      Venue is proper in the Twelfth Judicial Circuit Court, as all Defendants work and/or reside in this Circuit, and all of the acts and omissions giving rise to this action occurred in Manatee County, Florida.

8.      All conditions precedent to the maintenance of this action, including those set forth in Florida Statute § 768.28, have been performed, have occurred prior to its institution, or have been waived. Chapter 768 Notice is attached hereto as Exhibit "A".

## PARTIES

9.      At all times relevant hereto, Plaintiff, JOHN O'KEEFE ("Plaintiff"), was a resident of Manatee County, Florida, and a citizen of the United States of America, and is otherwise sui juris.

10.     At all times material hereto, Defendant, Deputy DARRELL PATTERSON ("PATTERSON"), was employed as a Certified Sworn Law Enforcement Officer for the

Defendant, Sheriff of Manatee County/Manatee County Sheriff's Office ("MCSO") and was acting under the direction and control of MCSO, in such capacity as an agent, servant, and employee of MCSO. Upon information and belief, and at all times material hereto, Defendant PATTERSON participated in the unconstitutional violations and other wrongful acts that occurred on July 10, 2016, at which time he was acting within the course and scope of his employment under color of state law. PATTERSON is and was a resident of the State of the Florida and is otherwise sui juris. PATTERSON is sued individually.

11.     At all times material hereto, Defendant, Deputy GREG MELITA ("MELITA"), was employed as a Certified Sworn Law Enforcement Officer for the Defendant, Sheriff of Manatee County/Manatee County Sheriff's Office ("MCSO") and was acting under the direction and control of MCSO, in such capacity as an agent, servant, and employee of MCSO. Upon information and belief, and at all times material hereto, Defendant MELITA participated in the unconstitutional violations and other wrongful acts that occurred on July 10, 2016, at which time he was acting within the course and scope of his employment under color of state law. MELITA is and was a resident of the State of the Florida and is otherwise sui juris. MELITA is sued Individually.

12.     At all times material hereto, Defendant, ZACHARY BRADLEY ("BRADLEY"), was employed as a Certified Sworn Law Enforcement Officer for the Defendant, Sheriff of Manatee County/Manatee County Sheriff's Office ("MCSO") and was acting under the direction and control of MCSO, in such capacity as an agent, servant, and employee of MCSO. Upon information and belief, and at all times material hereto, Defendant BRADLEY participated in the unconstitutional violations and other wrongful acts that occurred on July 10, 2016, at which time he was acting within the course and scope of his employment under color of state law. BRADLEY

is and was a resident of the State of the Florida and is otherwise sui juris. BRADLEY is sued individually.

11.     At all times material hereto, Defendant, Manatee County Sheriff's Office ("MCSO") [RICK WELLS ("WELLS"), in his capacity as Sheriff of Manatee County, Florida], is a constitutional officer[1] and county official[2] of MANATEE COUNTY ("County"), which is a political subdivision, pursuant to Art. VIII, Sec. 1, of the Florida Constitution, duly organized under the laws of the State of Florida, and maintains his principal headquarters in Manatee County, Florida. MCSO is responsible, as a matter of law, for the actions of its officials, agents, and employees, and is responsible for their training, supervision, and conduct. MCSO is also responsible for ensuring that its law enforcement personnel obey the laws of the State of Florida and ensuring that its rules and regulations are followed and enforced.

## GENERAL ALLEGATIONS AND BACKGROUND

12.     Sheriff Wells, in his "Mission Statement" on the Manatee County Sheriff's Office website, states that "The goal of the Manatee County Sheriff's Office is to provide for the safety and security of the citizens and visitors of Manatee County, and to the greatest extent possible, to fulfill the constitutional requirement to ensure domestic tranquility." To attain this goal, Sheriff Wells promises to "Provide a professional well-trained force of law enforcement and correction deputies to assure the highest possible level of service."

13.     Sheriff Wells' website describes "Public Interest-Bias-Based Profiling" as "It is the policy of the Manatee County Sheriff's Office to patrol in a proactive manner, to aggressively investigate

---

[1] Chapter 30, Florida Statutes; Art. VIII, § 1(a), (d), Fla. Const.
[2] Art. VIII, § 1(a), (d), Fla. Const.

suspicious persons and circumstances, and to actively enforce the laws. Members of this agency will focus on the conduct of the person or other specific information for any investigatory contacts. Deputies must have reasonable suspicion supported by specific articulated facts that the person being stopped or detained has or is about to commit a crime or is currently presenting a threat to the safety of themselves or others." It goes on to say, "The Manatee County Sheriff's Office respects the dignity and rights of all persons and will protect the fundamental rights of all citizens to equal protection under the law and to be free from unreasonable searches and seizures, as provided by the Constitution of the United States." Unfortunately, Sheriff Wells has departed from its statement "We want to do the right thing:" and instead trampled on the Plaintiff's civil liberty to be secure in his persons, houses, papers, and effects, against unreasonable searches and seizures.

14.     This case involves another unjustified Fourth Amendment search unsupported by probable cause by Deputies of Sheriff Wells. Acting consistent with MCSO policies, procedures, customs, and practices of condoning Fourth Amendment searches unsupported by probable cause, failing to identify, train, discipline, or otherwise properly supervise deputies who have engaged in unjustified Fourth Amendment searches, and ratifying "Fourth Amendment searches unsupported by probable cause" with little or no investigation.

15.     The failure of WELLS to competently investigate unjustified Fourth Amendment search unsupported by probable cause, and to institute appropriate disciplinary and retraining action in the wake of them, serves to tacitly condone the egregious misconduct of the deputies involved. The agency's inaction in this regard effectively annuls its official general orders regarding the searches and seizures and substitutes in their place a permissive de facto custom and practice of tolerating unjustified Fourth Amendment searches unsupported by probable cause, which invariably has the effect of promoting similar misconduct by other deputies. In sum, the pattern

and practice of the excessive unjustified Fourth Amendment searches unsupported by probable

cause on the part of MCSO deputies stems from systemic deficiencies of official policy, in training

and supervision and from the inadequate investigation and routine ratification of the unjustified

Fourth Amendment searches unsupported by probable cause.

## FACTUAL ALLEGATIONS

16.     On July 10, 2016, at approximately 8:58 a.m. Manatee County Sheriff's Office, operator

16, created a Computer Aided Dispatch (CAD) event for a report of Vandalism at Publix, 4240

53rd Ave E, Bradenton, FL 34203. The response priority was three (3), which is a non-emergency

response.

17.     MELITA was the first deputy to arrive on scene and begin his investigation. PATTERSON

and BRADLEY responded to the scene for training purposes and ultimately became involved in

the investigation.

18.     A substandard investigation ensued. There was no objective evidence available to

PATTERSON, MELITA or BRADLEY to support reasonable suspicion or probable cause that

Plaintiff was involved in the alleged vandalism at Publix.

19.     The Complainant, Kevin Ferry, did not know when the alleged vandalism occurred, except

that it had not just occurred and was not in progress. Therefore, no exigency existed.

20.     There is a public thoroughfare, approximately 25 feet in width, in-between Publix and

Plaintiff's residence that is traveled by neighborhood teenagers and used by all-terrain vehicles.

21.     There was objective evidence to support a reasonable person concluding that anyone could have perpetrated the vandalism. Instead of acknowledging the objective evidence, PATTERSON, MELITA and BRADLEY endeavored on a mere hunch, unsupported by articulable facts.

22.     At approximately 9:20 a.m. MELITA advised dispatch that he was going to 4403, 4407 and 4411, to see if he could locate from where the shooting came.

23.     Thereafter, BRADLEY, not armed with a warrant or probable cause, proceeded to 55th Avenue Drive East, where he parked his marked patrol unit in the roadway adjacent to 4413 55th Avenue Drive East, which is an empty lot. He exited his marked patrol unit and proceeded towards the Plaintiff's residence. BRADLEY then departed the public thoroughfare and set foot onto the Plaintiff's private real property and curtilage and progressed directly to the east-side of the Plaintiff's residence and proceeded to walk along the east-side of the Plaintiff's residence to the locked gate of Plaintiff's backyard, which is private property and not open to the public. BRADLEY then fumbled with the locked gate, stood on the gate, causing damage, and made gestures with his hand, presumably to signal the deputies at Publix. BRADLEY then retreated, by traversing the side of Plaintiff's residence to the front yard, and back to the public thoroughfare and then proceeded to his marked patrol vehicle.

24.     BRADLEY's departure from the public thoroughfare was not in such a manner that said course of departure would lead him to the front door of Plaintiff's residence to speak to the Plaintiff. BRADLEY never made any attempt to contact the Plaintiff prior to setting foot upon the Plaintiff's private real property and entering the curtilage for the sole purpose of conducting an unlawful search for evidence of a purported crime.

25.     At the time of BRADLEY's departure from the public thoroughfare and entry onto the Plaintiff's private real property and curtilage, he was wearing a uniform with MCSO insignia; and was equipped with a ballistic vest covering his upper body, and armed with a loaded semi-automatic handgun, and two additional fully loaded magazines on his gun belt.

26.     Several minutes after BRADLEY retreated from the Plaintiff's private real property and curtilage, PATTERSON, MELITA and BRADLEY, not armed with a warrant or probable cause, arrived at 4413 55th Avenue Drive East, where they parked their marked patrol units partially in the roadway adjacent to 4413 55th Avenue Drive East, which is an empty lot. They exited their marked patrol units and proceeded towards the Plaintiff's residence.

27.     While walking towards Plaintiff's residence, one of Plaintiff's neighbors (directly across the street from Plaintiff's residence) exited their residence and appeared to have inquired as to the reason for the PATTERSON, MELITA and BRADLEY's presence. Following their limited discussion with Plaintiff's neighbor, the PATTERSON, MELITA and BRADLEY stepped off the public thoroughfare and set foot onto Plaintiff's private real property and curtilage and proceeded along the west-side of Plaintiff's residence to the locked gate of Plaintiff's backyard, which is private property and is not open to the public.

28.     PATTERSON, MELITA and BRADLEY's departure from the public thoroughfare was not in such a manner that said course of departure would lead them to the front door of Plaintiff's residence to speak to the Plaintiff. PATTERSON, MELITA and BRADLEY never made any attempt to contact the Plaintiff prior to setting foot upon the Plaintiff's private real property and entering the curtilage for the sole purpose of conducting an unlawful search for evidence of an alleged crime.

29.    PATTERSON, MELITA and BRADLEY, while proceeding along the west-side of Plaintiff's residence towards the locked gate of Plaintiff's backyard, peered into the windows on the west-side of Plaintiff's residence and Plaintiff's enclosed porch area, which are not visible from the public thoroughfare of 55th Avenue Drive East.

30.    At the time of PATTERSON, MELITA and BRADLEY's departure from the public thoroughfare and entry onto the Plaintiff's private real property and curtilage, PATTERSON and MELITA were wearing the same attire as BRADLEY, a uniform with MCSO insignia; and were equipped with ballistic vests covering their upper body, and armed with loaded semi-automatic handguns, and two additional fully loaded magazines on their gun belts.

31.    As the deputies were standing at the west-side locked gate to Plaintiff's back yard, Plaintiff's guest exited Plaintiff's residence and observed PATTERSON, MELITA and BRADLEY on the west-side of Plaintiff's residence, standing at the locked gate of Plaintiff's backyard. She asked PATTERSON, MELITA and BRADLEY what they were doing, which prompted PATTERSON, MELITA and BRADLEY to turn around and walk towards Plaintiff's driveway. At that time Plaintiff's guest knocked on Plaintiff's front-door and advised Plaintiff that he should come outside because PATTERSON, MELITA and BRADLEY were on the side of his residence peering into the windows, enclosed porch and backyard.

32.    Plaintiff exited his residence and met with PATTERSON, MELITA and BRADLEY. MELITA asked Plaintiff if he had heard any gun shots on the previous night. Plaintiff advised him that he had not heard any gun shots to his knowledge but had been hearing what he believed to be fireworks, intermittently, as the Fourth of July had just passed, and neighborhood kids tend to begin shooting off fireworks a week before and after the Fourth of July.

33.     PATTERSON then advised that there were bullet holes, so it could not have been fireworks. Plaintiff conceded that if there were bullet holes then clearly it could not be fireworks. At this point MELITA began to question Plaintiff regarding his whereabouts and activities on the night of July 9, 2016. Plaintiff, while under no obligation to answer said questions, was cooperative and advised him that he had been home most of the night, except an hour or two around 9:00 p.m. He then asked if anyone else lived at Plaintiff's residence and Plaintiff advised him that he has a roommate, but he was in another country at that time. MELITA asked Plaintiff if he owned any guns, which Plaintiff advised him that he did not. This concluded the Plaintiff's first encounter with PATTERSON, MELITA and BRADLEY. The Plaintiff's guest was present during this first encounter and actively participated in the dialogue with the PATTERSON, MELITA and BRADLEY. Plaintiff's guest advised PATTERSON, MELITA and BRADLEY that she arrived at Plaintiff's residence around 7:30 a.m. to assist Plaintiff with repairing a leaking air duct in his attic.

34.     At the conclusion of the first encounter the Plaintiff understood that PATTERSON, MELITA and BRADLEY were going to continue canvassing the neighborhood. The Plaintiff did not give PATTERSON, MELITA and BRADLEY authorization, directly or implied, to walk around the curtilage of Plaintiff's residence and peer into his windows, backyard or enclosed porch area. Plaintiff expected PATTERSON, MELITA and BRADLEY to immediately depart his private real property.

35.     The Plaintiff returned to the interior of his residence and his guest proceeded to leave. Plaintiff received a call, immediately, from his departing guest, advising that PATTERSON, MELITA and BRADLEY returned to the same location where she found them and continued peering into windows and standing at Plaintiff's locked gate, looking into his backyard and enclosed porch area. At that time Plaintiff opened the camera app on his cell phone and observed

PATTERSON, MELITA and BRADLEY on the west-side of his residence, looking into his windows, backyard and enclosed porch area.

36.     Plaintiff secured his dogs and began to exit his residence to confront PATTERSON, MELITA and BRADLEY regarding their unlawful entry onto his private property (curtilage) when MELITA knocked on Plaintiff's front-door. Plaintiff exited his residence and conversed with MELITA. This encounter, unlike the first encounter, was not a consensual encounter. MELITA demanded that Plaintiff provide him with his name and date of birth, to which Plaintiff advised him that he preferred not to give his name as he did not want to be involved.

37.     MELITA and PATTERSON then exerted their law enforcement authority and stated that it was not a request. Plaintiff had to provide his name and date of birth, as he was conducting a criminal investigation.

38.     At this point, any implication of a consensual encounter (which it was not) shifted to an unlawful detention of Plaintiff's person and a custodial interrogation ensued. PATTERSON, MELITA and BRADLEY, armed with semi-automatic hand guns, positioned themselves in a manner that led the Plaintiff to believe he was not free to retreat into his residence or terminate said encounter.

39.     Plaintiff asked PATTERSON, MELITA and BRADLEY what they were doing on his property and why they were looking into his windows, backyard and enclosed porch area. PATTERSON AND MELITA both stated that they were conducting a criminal investigation and refused to elaborate. PATTERSON AND MELITA continued to demand Plaintiff's name to which Plaintiff continued to advise them that he did not wish to be named in, or a part of, their investigation.

40.    After several minutes of the Plaintiff being unlawfully detained, Plaintiff instructed PATTERSON, MELITA and BRADLEY that their conduct violated his Fourth Amendment right to be free from unreasonable search and seizure, and that they were actively trespassing and needed to immediately disperse and get the fuck off his private property. Thereafter, PATTERSON, MELITA and BRADLEY departed the Plaintiff's property.

41.    While departing the Plaintiff's property, MELITA removed a note pad from his shirt pocket and wrote down the tag number of one of the three vehicles at Plaintiff's residence. At the time of recording the tag number he was unaware to whom the vehicle belonged and could not say for certain to whom the vehicle belonged.

42.    Shortly after PATTERSON, MELITA and BRADLEY departed from Plaintiff's residence, a MCSO marked patrol unit parked in the road-way adjacent to Plaintiff's residence at 4332 55th Ave Dr E, and sat there for approximately 30 minutes. Upon information and belief, and a review of the MSO Message Traffic Report, Plaintiff reasonably believes that the purpose of John Doe Deputy's presence was purely for the purpose of intimidation and to place Plaintiff under duress.

Incident/Investigation Report - 2016020212

43.    Thereafter, MELITA authored an incident report, wherein he falsely and maliciously reports "I checked the rear of the three yards behind Publix, 4403, 4407 and 4411 55th Ave Dr E. 4407 55th Ave Dr E, was the only home consistent with the trajectory." "As I was looking at the backyards from the driveway, a male, later known as John O'Keefe walked out…" At this time no evidence to support a PCA or capias."

44.    The Plaintiff's backyard, as well as the adjacent backyard located at 4411 is not visible from Plaintiff's driveway. Further, the Plaintiff exited his residence when his departing guest

caught PATTERSON, MELITA and BRADLEY engaged in an unlawful search on the west-side of Plaintiff's residence.

45.     To Plaintiff's knowledge and belief, MELITA lacks any formal training in forensic ballistic/ trajectory analysis or crime scene reconstruction. MELITA's assertion that the Plaintiff's residence was the only home consistent with the trajectory, is misleading and false. Plaintiff is informed and believes that MELITA willfully and maliciously withheld the fact that there is a public thoroughfare, approximately 25 feet in width, in-between Publix and Plaintiff's residence that is routinely traveled by neighborhood teenagers, the public and used by all-terrain vehicles.

46.     MELITA goes on to author a Property and Evidence Receipt, wherein he logged "bullet fragments". MELITA falsely and maliciously named the Plaintiff in the Property and Evidence Receipt as the Subject/Defendant, even though there were two other options. Those being, Owner or Finder. MELITA's malicious intent can be drawn from the email transmittals and MSO Message Traffic Report between himself and Lt. Brady McCabe, wherein McCabe advised MELITA that without probable cause MELITA could not name the Plaintiff as the Suspect or Defendant. Instead, he was to name the Plaintiff as a Person-of-Interest. Contrary to this directive, MELITA maliciously named the Plaintiff in an official public record as the Subject/Defendant. MELITA's actions invaded the Plaintiff's right to privacy and cast the Plaintiff in a false light.

47.     Thereafter, the Plaintiff was the subject of a criminal investigation by Detective Garrick M. Plonczynski.

48.     The Plaintiff has been portrayed and cast in a false light to his neighbors as an undesirable, dangerous character, which is untrue, as a direct and proximate result of PATTERSON, MELITA and BRADLEY's actions and the subsequent investigation of Detective Garrick M. Plonczynski.

Common Practice for MCSO

49.     On a daily basis, Deputy Sheriffs come into contact with citizens during their patrolling duties. Despite this daily contact, Defendant MCSO made no effort to adequately train and supervise said deputies. In order to adequately deal with the certainty of police contact with citizens, MCSO is charged with supplying the public with a police force that is adequately trained and equipped to interact with citizens and carry out their official duties while observing and protecting the fundamental constitutional rights of said citizens.

50.     MCSO was aware that there needed to be effective supervision and a command structure in place to deal with the problem of responding to incidents with citizens. MCSO failed to provide adequate supervision of its deputies in the field when said deputies encounter citizens not engaged in criminal activity.

51.     At all times material hereto, MCSO was responsible for adopting and implementing the rules and regulations specifically in relation to hiring, screening, training, supervising, controlling, disciplining, and assigning deputies to their respective duties within Manatee County, Florida.

52.     MCSO has maintained a custom of ignoring citizens' fundamental fourth amendment constitutional rights to be free from unreasonable searches and seizures in the performance of official duties by its sworn law enforcement officers. At all times material hereto, under MCSO General Order 4005 for Patrol Investigations, deputies are instructed that they are authorized to stop and detain persons simply because 5.1.3  The person(s) flee at the sight of a deputy; 5.1.4 The person or vehicle is seen leaving the area of a crime; 5.1.5  The person is behaving in a manner indicating criminal activity; e.g., hiding, driving with headlights off; 5.1.6  The time of day or night; 5.1.7  The type of neighborhood or location; 5.1.8  The deputy's prior knowledge of the

person, or his / her criminal record; 5.1.9  The location where observed. This General Order is ambiguous, misleading and in direct conflict with the precedent set forth by the Supreme Court of the Unites States and the Florida District Courts of Appeals.

53.    MCSO's actions in this case and previous similar situations indicate a policy and custom of indifference to the fundamental constitutional rights of those with whom they interact who are not engaged in criminal activity and a failure to properly train and/or supervise their deputies in how to deal with the average citizen going about their personal business and not engaged in criminal activity. MCSO's refusal to adequately train its deputies on how to interact with the average citizen going about their personal business and not engaged in criminal activity —and MCSO's failure to supervise those deputies—has resulted in the infliction of excessive infringement upon the average citizen going about their personal business not engaged in criminal activity and the violation of their constitutional rights. This lack of training and supervision causes these ill-trained and illequipped deputies to resort to the use of unlawful detentions, searches and seizures, and an unlawful assertion of authority as their only alternative.

54.    MCSO deputies have increasingly and alarmingly searched and seized law abiding citizens, including Plaintiff, in situations where the searches and detention are entirely unjustified and where the conduct of the officers created dangers that would otherwise have not existed and contributed to the violations of citizens; including Plaintiff's, fundamental constitutional rights. There has specifically been an increasing and alarming number of similar incidents where MCSO deputies have, without probable cause and/or reasonable suspicion, detained and searched members of the public, in violation of the Fourth Amendment, and/or seriously injured or endangered the public by the intentional and/or negligent misconduct by MCSO deputies. A review of the Internal Affairs Investigations of these incidents shows a conscious disregard to the

facts and circumstances surrounding each incident and a blanket justification of the actions of the deputies involved.

55.     MCSO has maintained a long-standing, widespread history of failure to train, supervise, or otherwise discipline its deputies for, among other things, the unlawful detentions, searches, and/or arrests even though it had notice of this unlawful conduct by its employees against the public.

56.     MCSO has maintained a system of review for abuses of lawful authority like the illegal search, unlawful detention, and/or arrests, among other things, by sworn law enforcement officers and complaints thereof, which has failed to identify improper searches, unlawful detentions, and/or arrests by deputies and to subject deputies who employed such acts to appropriate discipline, closer supervision, and/or retaining, to the extent that it has become the de facto policy and custom of MCSO to tolerate such acts by its deputies.

57.     Indeed, MCSO routinely performs cursory investigations of incidents involving extremely questionable illegal searches, unlawful detentions, and/or arrests on the part of MCSO deputies, with an eye toward exonerating the deputy involved rather than finding out the truth. Almost uniformly, investigators and supervisors uncritically endorse the deputies' versions of events, even when those versions are incomplete, inconsistent, or are in direct contradiction of objective evidence. The result is that these incidents involving questionable searches, detentions and/or arrests are not properly and impartially investigated, documented, or addressed with corrective measures where warranted.

58.     Plaintiff provided a lengthy written complaint (notice of intent) to the then acting Sheriff Brad Steube and the Internal Affairs Bureau of the MCSO of the incident complained of herein. The MCSO did not perform a cursory investigation, or any investigation for that matter, of the

claims of Plaintiff. Instead, the MCSO ignored Plaintiff's complaint and willfully turned a blind eye to the unlawful conduct of PATTERSON, MELITA and BRADLEY.

59.    Due to this intentionally inadequate investigative process, in virtually all Fourth Amendment violation incidents, including Plaintiffs, MCSO has declared the conduct of its deputies to be justified.

60.    MCSO's foregoing acts, omissions, policies, or customs caused law enforcement officers, including Defendants, PATTERSON, MELITA and BRADLEY, to believe that acts such as the unlawful searches, unlawful detentions, and/or unlawful arrests and the improper handling of incidents involving citizens, including Plaintiff, not engaged in criminal activity, would not be properly investigated. The consistent lack of accountability within MCSO for the questionable and often unjustifiable searches, detentions, and/or arrests has promoted an acceptance of disproportionate, aggressive, and unconstitutional behavior towards ordinary citizens. The resulting culture of aggression both promotes and condones intimidating and harsh approaches toward the citizenry, with the excessive use of unconstitutional practices and implied force as a frequent and foreseeable outcome.

61.    Despite MCSO's notice and knowledge of the dangerous and unlawful propensities of their sworn law enforcement officers because of said officers' lack of training, skill and/or experience, MCSO failed to implement any policies or programs to train said officers or otherwise intentionally failed to protect the public, including the Plaintiff, from its danger.

62.    MCSO had, and has, policies, customs, and practices that constitute deliberate indifference to Plaintiff's Constitutional Rights pursuant to the Fourth and Fourteenth Amendments, and

MCSO's policies and customs caused the violation of Plaintiff's rights and/or was the moving force behind such Constitutional violations as indicated by the facts described above.

63.     The policies, customs, and practices complained of include, but are not limited to, the following:

a.      Deliberate indifference by failing to institute an appropriate policy for the detention of ordinary citizens and by failing to enforce such a policy, if such a policy was in place;

b.      Deliberate indifference by failing to ensure that MCSO employees were sufficiently trained or otherwise educated in the extension and management of ordinary citizens' constitutional rights from the perspective of the arresting officer(s), dispatch officers and supervising or managing officers;

c.      Deliberate indifference by failing to provide sufficient supervision of the search and seizure in question and by failing to monitor the search and seizure in question;

d.      Deliberate indifference by improperly training MCSO Deputies in such a way that condones, encourages, and permits their officers and agents to violate the rights and inflict harm upon persons interacting with their deputies;

e.      Deliberate indifference by improperly training MCSO Deputies in such a way that condones, encourages, and permits their officers and agents to violate the rights and inflict harm upon ordinary citizens, not engaged in criminal activity, they encounter;

f.      Deliberate indifference in failing to properly supervise MCSO Deputies in their encounters with ordinary citizens;

g.      Deliberate indifference in failing to have Deputies properly reviewed for accurate use of the stop-and-frisk law, searches and detentions of persons and law abiding citizens, with conclusions frequently permitted to be drawn on the basis of clearly incorrect or contradictory information; and

h.      Deliberate indifference in failing to determine whether said employees, including Defendants PATTERSON, MELITA and BRADLEY, posed a threat to the public as a result of their propensity to commit unlawful acts.

64.     The Defendant MCSO was grossly and willfully negligent in the selection and/or training and/or supervision and/or retention of Defendants PATTERSON, MELITA and BRADLEY as sworn law enforcement officers of the Defendant MCSO, in that:

a.      It appointed said Defendants as sworn law enforcement officers when it knew or, in the exercise of reasonable care, should have known of the Defendants' dispositions to engage in such unlawful conduct.

b.      Despite the fact that it knew or should have known that this pattern of conduct was being carried out by its agents and employees, MCSO has failed to and refused to:

  (1)     remove Defendants PATTERSON, MELITA and BRADLEY from their positions as sworn law enforcement officers;

  (2)     take any disciplinary action against said Defendants; and

  (3) provide redress for citizens, such as the Plaintiff, who have been injured thereby.

65.     MCSO's deliberate indifference, failure to train, failure to effectively supervise, and its permission (and toleration of) the patterns and practices enumerated above and below, were the

moving forces causing the serious injuries to Plaintiff and the violation of Plaintiff's Constitutional Rights.

66.     The actions of Defendants PATTERSON, MELITA and BRADELY in this case, as well as the actions of Defendant MCSO in other similar situations, indicate that the deputies who violated Plaintiff's rights acted in accordance with MCSO's policies and reflect policies that were adopted by MCSO and their high ranking officials.

67.     The failure of MCSO to competently investigate unlawful searches, detentions and/or arrests, and to institute appropriate disciplinary and retraining action in the wake of them, serves to tacitly condone the egregious misconduct of the deputies involved. The agency's inaction in this regard effectively annuls its official general orders regarding detention/searches and substitutes in their place a permissive de facto policy and custom of tolerating unlawful searches, seizures, detentions and/or arrests, which will invariably have the effect of promoting similar misconduct by other deputies in the future. In sum, the pattern and practice of the unlawful searches, seizures, detentions and/or arrests on the part of MCSO deputies stems from systemic deficiencies in training and supervision and from the inadequate investigation and routine ratification of unlawful searches, seizures, detentions and/or arrests.

Deputy Darrell Patterson

68.     Deputy Darrell Patterson ("Patterson") was hired by MCSO in 2008. He initially worked in the MCSO Jail as a Corrections Deputy until approximately 2010, when he transitioned to the Law Enforcement Crossover Academy and eventually to the Enforcement Bureau.

69.     Patterson's Internal Affairs file contains numerous complaints for conduct unbecoming and neglect of duty. Among the complaints described in Patterson's file are (i) an allegation that while

off-duty he acted in an unprofessional manner by yelling at citizens using profanity and threatening to arrest them if they stepped on his property; (ii) an incident in which Patterson accessed confidential Emergency Contact Information (ECI) in violation of Driver's Privacy Protection Act and the D. A. V. I. D. user agreement/policy; (iii) an incident in which Patterson unlawfully entered an apartment, in violation of an individual's fourth amendment right, after being told not to enter due to the lack of exigent circumstances and insubstantial probable cause to believe evidence was being destroyed. On those occasions, an internal investigation was conducted and the only incident that was sustained was the violation of the Driver's Privacy Protection Act and the D. A. V. I. D. user agreement/policy. The unlawful entry into an apartment was not sustained due to a supervisor's decision to not file criminal charges against the individuals due to the blatant violation of the individuals' fourth amendment right and high probability that the search would be held unconstitutional and that the detainment became a de facto arrest.

70.     Upon information and belief, PATTERSON did not receive any remedial training pertaining to the incident where he unlawfully entered a home in violation of the Fourth Amendment. Said unlawful entry caused a victim to be denied justice as a result of the purported violation of the Fourth Amendment. The MCSO investigated, concluded a violation had or likely had occurred, and in the face of such findings, allowed PATTERSON to continue to interact with ordinary citizens and continue his practice of unlawful searches, seizures and detentions in direct violation of the Fourth Amendment of the Constitution, and failed to provide any form of remedial training to prevent future deprivations of Constitutional Rights of ordinary citizens, including the Plaintiff. As a result, PATTERSON did continue his unlawful practices and inevitably violated Plaintiff's constitutional right to be secure in his persons, houses, papers, and effects, against unreasonable searches and seizures.

71.     Deputy GREGG MELITA'S Internal Affairs file contains numerous complaints for conduct unbecoming and one neglect of duty. Plaintiff, upon receipt of MELITA's full IA file will supplement this paragraph by amendment.

72.     Deputy Zachary Bradley ("Bradley") was hired by MCSO in 2013. He initially worked in the MCSO Jail as a Corrections Deputy until approximately 2015, when he transitioned to the Law Enforcement Crossover Academy and eventually to the Enforcement Bureau. At the time of the incident that forms the basis of the Plaintiff's complaint, Bradley was in field training and partnered with Patterson. As of the date of this complaint, the undersigned is unaware of any Internal Affairs investigations regarding Bradley.

## COUNT I
### 42 U.S.C. § 1983 – Unlawful Search and Seizure in Violation of the Fourth Amendment
(Against Defendant Patterson)

73.     Plaintiff hereby incorporates paragraphs one through seventy-two of this Complaint as if fully set forth herein.

74.     The Defendant, PATTERSON, at all times relevant hereto, was acting under the color of state law in his capacity as a Deputy Sheriff and his acts or omissions were conducted within the scope of his official duties or employment.

75.     At the time of the complained of events, Plaintiff had a clearly established constitutional right under the Fourth Amendment to be secure in his persons, houses, papers, and effects, against unreasonable searches and seizures.

76.     Any reasonable law enforcement officer, including Patterson, knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

77.    PATTERSON's actions, as described herein, were objectively unreasonable in light of the facts and circumstances confronting him and violated the Fourth and Fourteenth Amendment rights of Plaintiff.

78.    PATTERSON lacked probable cause to arrest Plaintiff.

79.    PATTERSON lacked reasonable suspicion to detain Plaintiff.

80.    PATTERSON lacked probable cause for a search warrant.

81.    The search of Plaintiff's residence was wrongful, without probable cause and deprived Plaintiff of his Fourth Amendment right to be secure in his persons, houses, papers, and effects, against unreasonable searches and seizures.

81.    The actions of Patterson proximately caused damages to Plaintiff in loss of liberty, embarrassment, humiliation, pain and suffering and mental and emotional distress.

82.    PATTERSON's actions, as described herein, were also malicious and/or involved reckless, callous, and deliberate indifference to Plaintiff's federally protected rights. The actions of PATTERSON shock the conscience and violates the Fourth Amendment rights of Plaintiff.

83.    PATTERSON unlawfully seized Plaintiff by means of objectively unreasonable, excessive and conscious shocking implied force, thereby unreasonably restraining Plaintiff of his freedom.

84.    PATTERSON did not take reasonable steps to protect Plaintiff from the objectively unreasonable and conscience shocking actions of MELITA and BRADLEY despite being in a position to do so as a field training deputy.

85.    The acts or omissions of PATTERSON were moving forces behind Plaintiff's damages.

86.   The acts or omissions of PATTERSON as described herein intentionally deprived Plaintiff of his constitutional rights and caused him other damages.

87.   PATTERSON is not entitled to qualified immunity for the complained of conduct.

88.   PATTERSON at all times relevant hereto was acting pursuant to municipal/county custom, policy, decision, ordinance, regulation, widespread habit, usage, or practice in his actions pertaining to Plaintiff.

89.   As a proximate result of PATTERSON's unlawful conduct, Plaintiff has suffered actual emotional injuries, and other damages and losses as described herein entitling him to compensatory and special damages, in amounts to be determined at trial.

90.   As a further result of the PATTERSON's unlawful conduct, Plaintiff has incurred special damages, including related expenses and may continue to incur further and other special damages related expenses, in amounts to be established at trial.

91.   Plaintiff is entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law. There may also be special damages for lien interests.

92.   In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against Patterson under 42 U.S.C. § 1983, in that the actions of PATTERSON have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Plaintiff.

**WHEREFORE**, Plaintiff prays for the following relief:

   a. Judgment for compensatory damages in excess of $15,000.00;

   b. Judgment for exemplary or punitive damages;

c. Cost of suit;

d. Reasonable attorney fees, pursuant to 42 U.S.C. § 1983;

e. Trial by jury as to all issues so triable; and

f. Such other relief as this Honorable Court may deem just and appropriate

## COUNT II

### 42 U.S.C. § 1983 – Unlawful Search and Seizure in Violation of the Fourth Amendment
(Against Defendant Melita)

93.     Plaintiff hereby incorporates paragraphs one through seventy-two of this Complaint as if fully set forth herein.

94.     MELITA, at all times relevant hereto, was acting under the color of state law in his capacity as a Deputy Sheriff and his acts or omissions were conducted within the scope of his official duties or employment.

95.     At the time of the complained of events, Plaintiff had a clearly established constitutional right under the Fourth Amendment to be secure in his persons, houses, papers, and effects, against unreasonable searches and seizures.

96.     Any reasonable law enforcement officer, including MELITA, knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

97.     MELITA's actions, as described herein, were objectively unreasonable in light of the facts and circumstances confronting him and violated the Fourth Amendment rights of Plaintiff.

98.     MELITA lacked probable cause to arrest Plaintiff.

99.     MELITA lacked reasonable suspicion to detain Plaintiff.

100.    MELITA lacked probable cause for a search warrant.

101.    The search of Plaintiff's residence was wrongful, without probable cause and deprived Plaintiff of his Fourth Amendment right to be secure in his persons, houses, papers, and effects, against unreasonable searches and seizures.

102.    The actions of MELITA proximately caused damages to Plaintiff in loss of liberty, embarrassment, humiliation, pain and suffering and mental and emotional distress.

103.    MELITA's actions, as described herein, were also malicious and/or involved reckless, callous, and deliberate indifference to Plaintiff's federally protected rights. The actions of MELITA shocks the conscience and violates the Fourth Amendment rights of Plaintiff.

104.    MELITA unlawfully seized Plaintiff by means of objectively unreasonable, excessive and conscious shocking implied force, thereby unreasonably restraining Plaintiff of his freedom.

105.    MELITA did not take reasonable steps to protect Plaintiff from the objectively unreasonable and conscience shocking actions of PATTERSON and BRADLEY despite being in a position to do so.

106.    The acts or omissions of MELITA were moving forces behind Plaintiff's damages.

107.    The acts or omissions of MELITA as described herein intentionally deprived Plaintiff of his constitutional rights and caused him other damages.

108.    MELITA is not entitled to qualified immunity for the complained of conduct.

109.    MELITA at all times relevant hereto was acting pursuant to municipal/county custom, policy, decision, ordinance, regulation, widespread habit, usage, or practice in his actions pertaining to Plaintiff.

110.    As a proximate result of MELITA's unlawful conduct, Plaintiff has suffered actual emotional injuries, and other damages and losses as described herein entitling him to compensatory and special damages, in amounts to be determined at trial.

111.    As a further result of the MELITA's unlawful conduct, Plaintiff has incurred special damages, including related expenses and may continue to incur further and other special damages related expenses, in amounts to be established at trial.

112.    Plaintiff is entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law. There may also be special damages for lien interests.

113.    In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against MELITA under 42 U.S.C. § 1983, in that the actions of MELITA have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Plaintiff.

**WHEREFORE**, Plaintiff prays for the following relief:

      a. Judgment for compensatory damages in excess of $15,000.00;

      b. Judgment for exemplary or punitive damages;

      c. Cost of suit;

      d. Reasonable attorney fees, pursuant to 42 U.S.C. § 1983;

      e. Trial by jury as to all issues so triable; and

f. Such other relief as this Honorable Court may deem just and appropriate

## COUNT III

### 42 U.S.C. § 1983 – Unlawful Search and Seizure in Violation of the Fourth Amendment
(Against Defendant BRADLEY)

114.    Plaintiff hereby incorporates paragraphs one through seventy-two of this Complaint as if fully set forth herein.

115.    BRADLEY, at all times relevant hereto, was acting under the color of state law in his capacity as a Deputy Sheriff and his acts or omissions were conducted within the scope of his official duties or employment.

116.    At the time of the complained of events, Plaintiff had a clearly established constitutional right under the Fourth Amendment to be secure in his persons, houses, papers, and effects, against unreasonable searches and seizures.

117.    Any reasonable law enforcement officer, including BRADLEY, knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

118.    BRADLEY's actions, as described herein, were objectively unreasonable in light of the facts and circumstances confronting him and violated the Fourth Amendment rights of Plaintiff.

119.    BRADLEY lacked probable cause to arrest Plaintiff.

120.    BRADLEY lacked reasonable suspicion to detain Plaintiff.

121.    BRADLEY lacked probable cause for a search warrant.

122.    The search of Plaintiff's residence was wrongful, without probable cause and deprived Plaintiff of his Fourth Amendment right to be secure in his persons, houses, papers, and effects, against unreasonable searches and seizures.

123.    The actions of BRADLEY proximately caused damages to Plaintiff in loss of liberty, embarrassment, humiliation, pain and suffering and mental and emotional distress.

124.    BRADLEY's actions, as described herein, were also malicious and/or involved reckless, callous, and deliberate indifference to Plaintiff's federally protected rights. The actions of BRADLEY shocks the conscience and violates the Fourth Amendment rights of Plaintiff.

125.    BRADLEY unlawfully seized Plaintiff by means of objectively unreasonable, excessive and conscious shocking implied force, thereby unreasonably restraining Plaintiff of his freedom.

126.    BRADLEY did not take reasonable steps to protect Plaintiff from the objectively unreasonable and conscience shocking actions of PATTERSON and MELITA despite being in a position to do so.

127.    The acts or omissions of BRADLEY were moving forces behind Plaintiff's damages.

128.    The acts or omissions of BRADLEY as described herein intentionally deprived Plaintiff of his constitutional rights and caused him other damages.

129.    BRADLEY is not entitled to qualified immunity for the complained of conduct.

130.    BRADLEY at all times relevant hereto was acting pursuant to municipal/county custom, policy, decision, ordinance, regulation, widespread habit, usage, or practice in his actions pertaining to Plaintiff.

131.    As a proximate result of BRADLEY's unlawful conduct, Plaintiff has suffered actual emotional injuries, and other damages and losses as described herein entitling him to compensatory and special damages, in amounts to be determined at trial.

132.    As a further result of the BRADLEY's unlawful conduct, Plaintiff has incurred special damages, including related expenses and may continue to incur further and other special damages related expenses, in amounts to be established at trial.

133.    Plaintiff is entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law. There may also be special damages for lien interests.

134.    In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against BRADLEY under 42 U.S.C. § 1983, in that the actions of BRADLEY have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Plaintiff.

**WHEREFORE**, Plaintiff prays for the following relief:

    a. Judgment for compensatory damages in excess of $15,000.00;

    b. Judgment for exemplary or punitive damages;

    c. Cost of suit;

    d. Reasonable attorney fees, pursuant to 42 U.S.C. § 1983;

    e. Trial by jury as to all issues so triable; and

    f. Such other relief as this Honorable Court may deem just and appropriate

## COUNT IV

### Intrusion Upon Seclusion / Invasion of Privacy

#### (As to Defendant, Patterson, Melita and Bradley)

135.    Plaintiff hereby incorporates paragraphs one through seventy-two of this Complaint as if fully set forth herein.

136.    Defendants, PATTERSON, MELITA and BRADLEY, without authorization, intentionally and willfully invaded the private property and private affairs of the Plaintiff.

137.    Defendants intentionally, and maliciously interfered with Plaintiff's interest in solitude and seclusion, as to his person and as to his private affairs or concerns.

138.    Defendants' intrusion was highly offensive to the Plaintiff and is highly offensive to any reasonable man.

139.    Defendants' intrusion was offensive and objectively unreasonable.

140.    Defendant intruded into a plaintiff's private affairs where plaintiff has an absolute expectation and fundamental right to privacy.

141.    Plaintiff has suffered mental anguish from surprise, fright, and anger as a result of having been disturbed and having his private affairs intruded upon by the Defendants.

142.    As a proximate result of the Defendants' unauthorized intrusion of Plaintiff's private property and private affairs, Plaintiff has suffered actual emotional injuries, and other damages and losses as described herein entitling him to compensatory and special damages, in amounts to be determined at trial.

143.    As a further result of the Defendants' unauthorized intrusion of Plaintiff's private property and private affairs, Plaintiff has incurred special damages, including related expenses and may

continue to incur further other special damages from related expenses, in amounts to be established at trial.

144.    Plaintiff is entitled to attorneys' fees and costs, pre-judgment interest and costs as allowable by law.

**WHEREFORE**, Plaintiff prays for the following relief:

      a. Judgment for compensatory damages in excess of $15,000.00;

      b. Judgment for exemplary or punitive damages;

      c. Cost of suit;

      d. Reasonable attorney fees;

      e. Trial by jury as to all issues so triable; and

      f. Such other relief as this Honorable Court may deem just and appropriate

## COUNT V

### Trespass to Private Real Property

(As to Defendant Patterson, Melita and Bradley)

145.    Plaintiff hereby incorporates paragraphs one through seventy-two of this Complaint as if fully set forth herein.

146.    On July 10, 2016, Plaintiff owned and was in possession of the real property described as 4407 55th Ave Dr E, Bradenton, Florida 34203. Said real property is and was Plaintiff's place of abode.

146.    On July 10, 2016, Defendants, MELITA, PATTERSON and BRADLEY, without authorization, consent or invitation, and against the will of Plaintiff, unlawfully set foot onto Plaintiff's real property and remained therein.

148.    Plaintiff is informed and believes, and on the basis of this information and belief alleges, that at all times mentioned in this complaint, Defendants were the agents and employees of the Sheriff of Manatee County, Florida, and in trespassing were acting within the course and scope of such agency and employment.

149.    Plaintiff has suffered mental anguish from surprise, fright, and anger as a result of having been disturbed and having his private real property intruded upon by Defendants.

150.    As a proximate result of Defendants unauthorized intrusion of Plaintiff's private property, Plaintiff has suffered actual emotional injuries, and other damages and losses as described herein entitling him to compensatory and special damages, in amounts to be determined at trial.

151.    As a further result of the Defendants' unauthorized intrusion of Plaintiff's private property, Plaintiff has incurred special damages, including related expenses and may continue to incur further other special damages related expenses, in amounts to be established at trial.

152.    Plaintiff seeks an award of attorneys' fees and costs and pre-judgment interest as allowable by law.

**WHEREFORE**, Plaintiff prays for the following relief:

    a. Judgment for compensatory damages in excess of $15,000.00;

    b. Judgment for exemplary or punitive damages;

    c. Cost of suit;

d. Reasonable attorney fees;

e. Trial by jury as to all issues so triable; and

f. Such other relief as this Honorable Court may deem just and appropriate

## COUNT VI

### PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

(As to Defendant Patterson)

153.    Plaintiff hereby incorporates paragraphs one through seventy-two of this Complaint as if fully set forth herein.

154.    Plaintiff, and ordinary citizens of Manatee County, Florida, will suffer irreparable harm as a result of the Defendant, Patterson, continuing to possess the authority bestowed upon a Deputy Sheriff, allowing him to continue to use his status as a Deputy Sheriff to violate the constitutional rights of the Plaintiff and ordinary citizens of Manatee County. The Plaintiff and ordinary citizens of Manatee County will further suffer irreparable harm at the hands of Patterson's unlawful tactics which have on previous occasions resulted, and will continue to result, in the alleged perpetrators of criminal acts to avoid arrest and prosecution as a direct and proximate result of Patterson's actions in his official capacity as a Deputy Sheriff; and, allow victims of alleged criminal acts to be denied justice. In sum, to allow Patterson to continue his course of conduct, while clothed with the authority of the Sheriff, is law without justice.

155.    Plaintiff and ordinary citizens of Manatee County, Florida have no adequate remedy at law.

156.    Plaintiff has a substantial likelihood of success on the merits; and

157.    A temporary injunction will serve the public interest.

**WHEREFORE**, Plaintiff prays for the following relief:

a.   That the Court enter preliminary and permanent injunctive relief enjoining Defendant PATTERSON from engaging in any further law enforcement activity and/or from maintaining employment as a Deputy Sheriff and/or Sworn Certified Law Enforcement Officer within the State of Florida.

b.   That said relief be granted temporarily and permanently.

c.   That the Court award Plaintiff his costs, expenses and reasonable attorney's fees incurred therein; and

d.   Trial by jury as to all issues so triable; and

e.   Such other relief as this Honorable Court may deem just and appropriate

## COUNT VII

### 42 U.S.C. § 1983 - Deliberate Indifference by Defendant MCSO

158.   Plaintiff hereby incorporates paragraphs one through seventy-two of this Complaint as if fully set forth herein.

159.   Defendant MCSO violated the Plaintiff's Fourth and Fourteenth Amendment rights by failing to train its deputies to reasonably respond to individuals who are not engaged in criminal activity and by engaging in policies and practices that caused constitutional violations to people that are not engaged in criminal activity, but simply going about their business, by inappropriately engaging in unlawful detentions, searches, and/or arrests, without reasonable suspicion or probable cause and depriving Plaintiff, and ordinary citizens of their Fourth Amendment right to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. indifference to the fundamental constitutional rights of those they interact with who are not engaged in criminal activity.

160.    These constitutional violations were caused by MCSO 's lack of training and supervision in regard to deputies having the ability and knowledge to appropriately interact with people that are not engaged in criminal activity, but simply going about their business, without causing injury by unlawfully detaining, searching, and/or arresting ordinary citizens without reasonable suspicion or probable cause.

161.    Defendants PATTERSON, MELITA and BRADLEY knew or should have known that Plaintiff was not engaged in any criminal act, that they lacked any reasonable suspicion or probable cause to support an arrest and/or detention of Plaintiff or search of Plaintiff or Plaintiff's residence, and they should have known that any detention and search was objectively unreasonable in light of the totality of the circumstances.

162.    The unlawful search and detention by MCSO deputies against Plaintiff and Plaintiff's residence was objectively unreasonable, in violation of the Plaintiff's clearly established constitutional rights under the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983.

163.    At no time was Plaintiff under an articulable suspicion of committing any crime. At no time did he pose any threat of violence to any Defendant.

164.    As a result of the outrageous conduct of MCSO, Plaintiff suffered damages, subject to proof at trial.

165.    As a further direct and proximate result of the conduct of Defendant MCSO, Plaintiff suffered loss of his liberty and freedom, pain and suffering, mental anguish, and expenses. These losses are either permanent or continuing, and Plaintiff will suffer the losses in the future in violation of his civil rights.

**WHEREFORE**, Plaintiff prays for the following relief:

a. Judgment for compensatory damages in excess of $15,000.00;

b. Judgment for exemplary or punitive damages;

c. Cost of suit;

d. Reasonable attorney fees, pursuant to 42 U.S.C. § 1983;

e. Trial by jury as to all issues so triable; and

f. Such other relief as this Honorable Court may deem just and appropriate.

## COUNT VIII

**42 U.S.C. § 1983 Claim Against Defendant MCSO** [Rick Wells, in his capacity as
Sheriff of Manatee County, Florida] For Supervisory Liability

166.    Plaintiff hereby incorporates paragraphs one through seventy-two of this Complaint as if
fully set forth herein.

167.    Defendant MCSO violated Plaintiff's Fourth Amendment freedom from being secure in
his persons, houses, papers, and effects, against unreasonable searches and seizures when MCSO
failed to adequately train deputies/officers to respond to calls involving Plaintiff, and ordinary
citizens, not engaged in any criminal activity, but simply going about their business.

168.    MCSO's chief policy maker, Sheriff Wells, is responsible for the implementation and
promulgation of official policies for MCSO. Further, Sheriff Wells is responsible for the
promulgation of policies and the implementation of training to maintain an effective police force
that is capable and prepared to deal with encounters with Plaintiff and ordinary citizens, not
engaged in criminal activity.

169.    MCSO was deliberately indifferent to its responsibility to adequately prepare its deputies/officers for encounters with Plaintiff and ordinary citizens, not engaged in criminal activity, and for their interaction with, detention, searches and arrest of the same.

170.    MCSO knew or should have known, due to the large number of ordinary citizens in Manatee County and the large number of situations in which these individuals are eyewitnesses to crimes, accidents, victims of crimes, or are otherwise freely going about their routine affairs within Manatee County, that its deputies/officers would routinely encounter said ordinary citizens and that these deputies/officers would need to be aware of the appropriate methods of escalation from a consensual encounter to detention to searches to arrest of an ordinary citizen.

171.    MCSO is charged with properly training officers with the available and necessary skills that would allow officers to investigate a situation, while maintaining their own safety, and observing and refraining from violating the fundamental constitutional rights of ordinary citizens.

172.    MCSO was deliberately indifferent to its responsibility to create an effectively trained police force that could adequately respond to the scene of encounters with ordinary citizens. All of the conduct at the scene to investigate the Plaintiff's situation was contrary to established police methods for interacting with ordinary citizens for which articulable reasonable suspicion and/or probable cause are no existent.

173.    Thus, there were no sufficiently trained deputies available to reasonably and effectively deal with the Plaintiff's situation. All of the acts and omissions of the insufficiently trained deputies were inappropriate to the situation and caused the encounter to be escalated, ultimately resulting in a violation of the Plaintiff's fundamental constitutional rights.

174.     Further, the officers were not provided with sufficiently detailed policies and procedures to use in investigating a situation involving that of Plaintiff. These officers did not have the adequate direction or assistance with which to respond to the incident that occurred on July 10, 2016.

175.     All of the above referenced failures are the responsibility of MCSO, which was deliberately indifferent to its responsibility to have appropriate policies and procedures in place and to train and supervise deputies employed by MCSO to deal with the recurring situation where they had to respond to calls involving ordinary citizens and/or Plaintiff's situation.

176.     As a further direct and proximate result of the conduct described above, Plaintiff suffered loss of his liberty and freedom, pain and suffering, mental anguish, and expenses. These losses are either permanent or continuing, and Plaintiff will suffer the losses in the future, in violation of his civil rights.

**WHEREFORE**, Plaintiff prays for the following relief:

     a. Judgment for compensatory damages in excess of $15,000.00;

     b. Judgment for exemplary or punitive damages;

     c. Cost of suit;

     d. Reasonable attorney fees, pursuant to 42 U.S.C. § 1983;

     e. Trial by jury as to all issues so triable; and

     f. Such other relief as this Honorable Court may deem just and appropriate.

Respectfully submitted,

Dated: July 10, 2018.

_____

**JOHN O'KEEFE**
4407 5th Avenue Drive East
Bradenton, Florida 34203
Email: Jokeefe.Service@gmail.com
Tel: (941) 807-9169
Plaintiff